IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH L. IRWIN,

          Plaintiff,

vs.                           Case No. 11-2157-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On August 18, 2009, administrative law judge (ALJ) Linda L. Sybrant issued her decision (R. at 9-21). Plaintiff alleges that he has been disabled since October 25, 2005 (R. at 9). Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 11). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since October 25, 2005, his alleged onset date (R. at 11). At step two, the ALJ found that plaintiff had the following severe impairments:

degenerative disc disease of the lumbar spine with surgery in 1992, 1993 and 2000; degenerative disc disease of the C5-6 and C6-7 with moderate to severe stenosis; obesity; attention deficit hyperactivity disorder; anxiety disorder not otherwise specified; and a history of narcotic drug abuse and other prescription drug abuse (R. at 11). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 11-13). After determining plaintiff's RFC (R. at 13), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 20). At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 20-21). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III. Does substantial evidence support the ALJ's RFC findings?**

The ALJ made the following RFC findings:

> The claimant retains the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for being limited to occasional pushing, pulling and reaching overhead. He can occasionally balance, stoop, crouch, crawl, kneel and climb. He should avoid concentrated exposure to extreme cold and vibration. He can have limited contact with the general public and superficial contact with coworkers and supervisors.

(R. at 13). In support of his findings, the ALJ stated the following:

> The State agency opinions are consistent with

5

> the material evidence in the file, supported
> by the notes from treating and examining
> medical professionals of record and
> consistent with the evidentiary requirements
> of Social Security disability programs.
> Based on these considerations, the
> undersigned gives <u>controlling</u> weight to these
> opinions and findings in determining the
> issue of disability.

(R. at 19, emphasis added). The record contains two state agency assessments, the first being a physical RFC assessment, prepared by Nicole Nielsen and signed on July 25, 2006 (R. at 173-180), and later affirmed by Dr. Legler on January 11, 2007 (R. at 415). The second state agency consultant report is a psychiatric review technique form filled out by Dr. Cohen on August 14, 2006 (R. at 279-291) and affirmed by Dr. Schulman on January 9, 2007 (R. at 414). These are the only medical opinions in the record that address plaintiff's RFC.

Defendant, in his brief, agreed with plaintiff's argument that the ALJ could not give controlling weight to state agency physicians because they were not treating sources. However, defendant argued that the ALJ could give substantial weight to their opinions, and noted that there were no contradictory medical opinions in the record (Doc. 7 at 6).

The court will first examine the psychiatric review technique (PRT) form and the mental RFC findings by the ALJ. On the PRT form, the evaluator determines plaintiff's degree of limitation in four general categories. In the first three

categories, the degrees of limitation are: none, mild, moderate, marked or extreme. The fourth category, the degrees of limitation range from none, one or two, three or four or more (R. at 289). The findings of Dr. Cohen and Dr. Schulman will be compared to the ALJ findings below:

|  | Cohen/Schulman assessment | ALJ findings |
|---|---|---|
| Restrictions of activities of daily living | mild | none |
| Difficulties in maintaining social functioning | mild | moderate |
| Difficulties in maintaining concentration, persistence, or pace | mild | mild |
| Episodes of decompensation | none | none |

(R. at 289, 12).

Based on these findings, Dr. Cohen and Dr. Schulman found that plaintiff's mental impairments were not severe (R. at 279). However, based on the findings of the ALJ in these four categories, the ALJ concluded that plaintiff in fact had severe mental impairments (R. at 11-12). Therefore, it is clear from the record that the ALJ did not give controlling or substantial weight to the state agency mental assessment.

Furthermore, the ALJ did not indicate what evidence supported the ALJ's finding that plaintiff should have limited contact with the general public and superficial contact with

7

coworkers and supervisors.  There is no explanation from the ALJ in her decision for why only these two mental limitations were included in the RFC findings, but not others, and there is no explanation regarding the basis for finding the degree of limitation in those two categories (i.e., there is no mention by the ALJ of any medical opinion or other evidence indicating or supporting a finding that plaintiff would be able to function at a job that required limited contact with the public and superficial contact with coworkers and supervisors).

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the

court will conclude that his RFC conclusions are not supported by substantial evidence. See <u>Southard v. Barnhart</u>, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. <u>Spicer v. Barnhart</u>, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. <u>Cruse v. U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. <u>Brown v. Commissioner of the Social Security Administration</u>, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

In his decision, the ALJ stated that he gave "controlling" weight to the state agency assessments (R. at 19), and also stated that "objective evidence" indicated that plaintiff should have limited contact with the public and superficial contact with coworkers and supervisors (R. at 12). However, as noted above, the ALJ made mental limitations that did not accord with the

state agency mental assessment, and failed to indicate what "objective" evidence supported the mental limitations set out in the ALJ's RFC findings.  Contrary to the requirements of SSR 96-8p, there is no narrative discussion describing how the evidence supported the ALJ's mental RFC findings.  As was true in the case of <u>Kency v. Barnhart</u>, Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004, Doc. 21 at 5), the record in the case before the court is devoid of any discussion explaining how the evidence supported the ALJ's mental RFC findings.

Furthermore, this assessment was prepared on August 14, 2006, and approved by Dr. Schulman on January 9, 2007 (R. at 279, 414).  The ALJ's decision was filed on August 18, 2009, over 2 ½ years later (R. at 21).  Thus, the ALJ decision purportedly gave "controlling" weight to an assessment that did not take into account treatment records in the over 2 ½ years since the assessment was prepared.

Subsequent to the mental RFC assessment, treatment records indicate the following:

> <u>June 7, 2007</u>: Plaintiff "makes threats to kill people when upset (last threatened his wife last week; in 2002 threatened to kill the screener at the Miami Co. hospital), last year got into a physical fight with his father who was hospitalized afterward, other fights in past" (R. at 485).
>
> Plaintiff diagnosed with hallucinations: "reports seeing spots and shadows (no other visual or auditory hallucinations reported)"

> Plaintiff diagnosed with delusions: "reports paranoid thoughts (someone in the house, someone outside or coming to get him)" (R. at 486).[1]
>
> The intake assessment also included the following: "Clt had two previous suicide attempts by overdose and cutting his wrists in 2002 and 2003...Clt also got into a fight with 6 men in 2005 when he tried to retrieve a bike of his from their home.  Clt was charged with battery for breaking one man's nose when he 'head-butted' him" (R. at 488).
>
> June 8, 2007: The report from the mental health center indicate that plaintiff "Gets mad easily and will lose control...Gets very violent.  Small things can set him off.  Gets road rage...May break things, threatens wife's life...Wants to hurt someone" (R. at 492).
>
> September 11, 2007: "Having some problems with neighbors.  Neighbor was complaining about his dog and he beat up his neighbor because of this.  Still angry with him and tried to pick another fight.  Gets in a rage" (R. at 481).
>
> Plaintiff diagnosed with "intermittent explosive disorder 312.34" (R. at 483).[2] This diagnosis continued to be reflected in treatment notes on June 13, 2008 and

---

[1] Delusions and hallucinations had previously been reported in treatment records from a different treatment provider on September 20, 2006 (R. at 371).

[2] The Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 667) includes in the diagnostic criteria for 312.34 Intermittent Explosive Disorder:

A. Several discrete episodes of failure to resist aggressive impulses that result in serious assaultive acts or destruction of property.

B. The degree of aggressiveness expressed during the episodes is grossly out of proportion to any precipitating psychosocial stressors.

11

September 17, 2008 (R. at 561, 587).

March 19, 2008: Report from Olathe Medical Center indicates that plaintiff hospitalized for an overdose. Although plaintiff stated he took 10 Flexerils last evening in an attempt to sleep, the hospital report indicated the following: "His family says that all day long, however, he had been talking about suicide. He had tried 3 previous attempts at suicide, 1 with pills, 1 with slitting his wrists, and 1 with holding shotgun to his head" (R. at 530).

June 13, 2008: "Doctor stopped seeing him for reportedly cursing out front desk staff" (R. at 562).

The ALJ decision failed to mention the diagnosis of hallucinations, delusions and intermittent explosive disorder or the numerous episodes of violent acting out. The decision also failed to mention that plaintiff has had 4 suicide attempts. In light of: (1) the ALJ's failure to make step two findings consistent with the state agency mental assessment, even though the ALJ purportedly gave controlling weigh to it, (2) the fact that the assessment (to which the ALJ purportedly gave controlling weight) was prepared 2 ½ years prior to the ALJ decision and thus failed to take into consideration plaintiff's mental health treatment in the 2 ½ years prior to the ALJ decision, (3) the ALJ's failure to explain the evidentiary basis for his mental RFC findings, and (4) the ALJ's failure to discuss plaintiff's hallucinations, delusions, intermittent explosive disorder and four suicide attempts, the court finds that

substantial evidence does not support the ALJ's mental RFC findings.

The record also contains a physical RFC state agency assessment, which was prepared on July 25, 2006 and signed by Nicole Nielsen (R. at 173-180). Ms. Nielsen was a single decision maker, or SDM (Doc. 5, Exhibit A-2, court transcript index, exhibit no. B6E). An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources. Herrman v. Astrue, Case No. 09-1297-SAC (D. Kan. Sept. 29, 2010). However, on January 11, 2007, this assessment was reviewed by Dr. Legler, who stated that he had reviewed all the evidence in the file, and found that the assessment of July 25, 2006 is affirmed as written (R. at 415). Given that the assessment was affirmed by a physician, the court finds no error by the ALJ by considering the assessment when determining plaintiff's RFC.

As noted above, the ALJ gave "controlling" weight to this assessment when making his physical RFC findings (R. at 19). In fact, the ALJ's RFC findings closely match the findings in the assessment approved by Dr. Legler (R. at 13, 173-180). The assessment prepared by Ms. Nielsen is a check-the-box evaluation form which contains some narrative discussion of the evidence; however, when Dr. Legler approved the assessment, he provided no

discussion of the evidence. The ALJ did not cite to any other medical opinion evidence in support of her physical RFC findings. However, the record does not contain any medical opinion evidence that clearly contradicts the ALJ's physical RFC findings.

RFC assessments, standing alone, prepared by non-examining sources, consisting primarily of check-the-box evaluation forms, do not constitute substantial evidence when they are not accompanied by thorough written reports or persuasive testimony. Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007); Lamb v. Barnhart, 85 Fed. Appx. 52, 57 (10th Cir. Dec. 11, 2003); see Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). Because this case is being remanded in order for the ALJ to make new mental RFC findings for the reasons set forth above, on remand, the ALJ also will need to make physical RFC findings after considering all the evidence in the record, including plaintiff's medical records from the alleged onset date to the date of the new ALJ decision. The court would note that Dr. Legler approved the physical RFC assessment on January 11, 2007, over 2 ½ years prior to the ALJ decision of August 18, 2009. Thus, Dr. Legler did not have before him any of the medical records for 2 ½ years prior to the ALJ decision. When this case is remanded, to the extent that the ALJ relies on a state agency assessment in making her RFC findings, the ALJ should discuss whether the assessment is accompanied by thorough written reports

or persuasive testimony.  The ALJ should also consider recontacting plaintiff's treatment providers in order to determine if additional information or clarification is available (20 C.F.R. § 404.1512(e)(1)), and/or obtain a detailed examination from a consulting physician which addresses plaintiff's functional limitations.  <u>Fleetwood</u>, 211 Fed. Appx. at 741; <u>Lamb</u>, 85 Fed. Appx. at 57.  The ALJ could also consider having a medical expert testify at the hearing regarding plaintiff's RFC after reviewing the record.[3]

**IV.  Did the ALJ err by failing to consider all of plaintiff's impairments?**

Plaintiff argues that the ALJ erred by failing to consider the impact of all of plaintiff's impairments in her decision, and by failing to list certain impairments as severe impairments at step two (Doc. 6 at 14-16).  The court will not reach this issue because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical evidence regarding plaintiff's RFC, as set forth above.  See <u>Robinson v.</u>

---

[3]The U.S. Supreme Court has considered the use of medical advisors at administrative hearings and approved of the concept.  <u>Richardson v. Perales</u>, 402 U.S. 389, 408 (1971).  Such opinions are competent evidence and in appropriate circumstances may constitute substantial evidence supporting the ALJ's decision.  <u>Lopez v. Apfel</u>, 1997 WL 758831 at *2 (10th Cir. Dec. 9, 1997)(ALJ properly relied on opinions of medical advisor and consulting physicians who disagreed with treating physician on issue of disability); <u>Torres v. Secretary of HHS</u>, 870 F.2d 742, 744 (1st Cir. 1989)(the testimony of a medical advisor who reviews the record, testifies and is subject to cross-examination may constitute substantial evidence depending on the circumstances, including the nature of the illness and the information provided to the advisor).

Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).  Insofar as the ALJ failed to list certain impairments as severe impairments, when this case is remanded, the 10th Circuit has given clear guidance on this issue.  In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  In Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two.  The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

**V. Did the ALJ err in her consideration of a third-party statement by plaintiff's wife?**

16

In his decision, the ALJ discounted or gave little weight to her statement, finding it cumulative and stating that it did not establish that plaintiff was disabled for the same reason plaintiff's testimony alone did not establish disability (R. at 18). The court will not reach this issue because the weight given to her statement may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical evidence regarding plaintiff's RFC, as set forth above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004). However, the court does not find that the ALJ used an improper legal standard when she considered this statement. The court would further note that it will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 24th day of April 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge